CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 29 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

TODD A. BAIRD, et al., )
)
Plaintiffs, )
) Civil Action No. 3:15-CV-00041
v. )
)
) **MEMORANDUM OPINION**
)
THE FEDERAL HOME MORTGAGE )
CORPORATION, )
) By: Hon. Glen E. Conrad
Defendant. ) Chief United States District Judge
)

Plaintiffs Todd A. Baird and Dana G. Baird filed this action against defendant The Federal Home Mortgage Corporation ("Freddie Mac"). The case focuses on the foreclosure sale of the Bairds' home and their subsequent eviction. The case is presently before the court on Freddie Mac's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to dismiss will be granted with respect to Counts I, III, and IV of plaintiffs' complaint and will be denied with respect to Count II. Plaintiffs' request for leave to file an amended complaint will be granted.

### Background

The following facts, taken from plaintiffs' complaint, are accepted as true for purposes of the motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

On June 9, 2004, plaintiffs entered into a mortgage loan with GMAC Bank for property located at 3934 Campbell Road in Troy, Virginia. The loan was evidenced by a note and secured by a deed of trust. The deed of trust appointed Brandon Beswick as trustee.

At some point thereafter, GMAC Bank assigned the note to GMAC Mortgage, LLC

("GMAC Mortgage"), who claimed all rights as holder of the note. GMAC Mortgage then assigned the note to Freddie Mac and "acted as [an] agent for Freddie Mac, which was the actual owner of the loan." Id. ¶ 16. On August 19, 2009, GMAC Mortgage appointed Professional Foreclosure Corporation of Virginia ("PFC") as substitute trustee in place of Beswick. The appointment document was recorded in the Clerk's Office for Louisa County.

Plaintiffs eventually defaulted on their mortgage loan. As a result, GMAC Mortgage instructed PFC to foreclose on the Property. PFC published two advertisements for the foreclosure sale in the Richmond-Times Dispatch on September 28, 2009 and October 5, 2009. On October 7, 2009 at approximately 5:30 p.m., PFC conducted a foreclosure sale in front of the Louisa County Circuit Court. Freddie Mac made the highest bid of $112,017.00 and became record owner of the property through an executed trustee's deed. GMAC Mortgage then reported to credit bureaus that plaintiffs' home had been foreclosed. According to the complaint, plaintiffs did not become aware of the foreclosure until November of 2009.

On March 19, 2012, Freddie Mac filed an unlawful detainer action against plaintiffs in the Louisa County General District Court. Plaintiffs were served notice of the action by mail. On April 10, 2012, the general district court held a hearing in which it awarded possession of the property to Freddie Mac. Plaintiffs were not present at the hearing as they allegedly had no notice of the action. On July 5, 2012, Freddie Mac filed a second unlawful detainer action against plaintiffs; however, Freddie Mac obtained a non-suit in this case on September 4, 2012.

On May 1, 2012, plaintiffs filed a complaint against Freddie Mac, GMAC Mortgage, and PFC in the Circuit Court of Louisa County, seeking damages and rescission of the foreclosure and trustee's deed. Two weeks later, GMAC Mortgage filed a bankruptcy petition, which stayed all litigation against it. Plaintiffs obtained a non-suit in this action on February 21, 2013.

In March of 2013, Freddie Mac locked plaintiffs out of their home and prevented them from entering. As a result, plaintiffs lost personal property that was located inside the house.

Plaintiffs filed the instant action against Freddie Mac in the Circuit Court of Louisa County on July 13, 2015, asserting various claims related to the foreclosure of their home and subsequent eviction. These counts include: breach of explicit covenants (Count I); breach of contract (Count II); wrongful eviction (Count III); and breach of implied covenant of good faith and fair dealing (Count IV). In the complaint, plaintiffs contend that they filed a grievance letter to Freddie Mac pursuant to the deed of trust. They seek compensatory damages in the amount of $500,000.00. On August 11, 2015, Freddie Mac removed the case to this court.

Upon removal, Freddie Mac moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on March 24, 2016. The motion has been fully briefed and is ripe for disposition.

## **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for failure to state a claim upon which relief can be granted. To survive such a motion, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). All well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Moreover, the complaint must contain

3

sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

I. **Notice Prior to Judicial Action**

Freddie Mac first argues that the complaint should be dismissed because plaintiffs failed to afford it a reasonable opportunity to take corrective action pursuant to paragraph 20 of the deed of trust. Paragraph 20 provides that "[n]either Borrower or Lender may commence, join, or be joined to any judicial action" that arises out of the loan documents or a breach of any of the loan documents until "such Borrower or Lender has notified the other party ... of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action." Compl. Ex. A ¶ 20, Docket No. 1-1. Paragraph 15 of the deed of trust further provides that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing." Id. ¶ 15. Other district courts have found that almost identical language precluded litigation when the party alleging a violation of the agreement failed to provide notice and an opportunity to cure to the breaching party prior to filing suit. See, e.g., Estep v. Fed. Home Loan Mortgage Corp., No. 5:13-CV-02128, 2014 WL 1276495, at *4 (S.D.W. Va. Mar. 27, 2014); Holtzapfel v. Wells Fargo Bank, N.A., No. CIV.A. 2:12-00937, 2013 WL 1337283, at *3 (S.D.W. Va. Mar. 29, 2013); Kerns v. United States, No. 3:12CV490-JRS, 2012 WL 5877479, at *4 (E.D. Va. Nov. 20, 2012).

4

In the instant case, as an initial matter, the court believes that the four claims in plaintiffs' complaint are predicated on the deed of trust, and an alleged subsequent modification to the deed of trust, as the causes of action depend on the existence of a contractual relationship between the parties. See Gerber v. First Horizon Home Loans Corp., No. 05-1554P, 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006) (denying motion to dismiss a claim under the Consumer Protection Act, despite non-compliance with the notice-and-cure provision, because such allegation of deceptive business practices "clearly exists independent of any contract between the parties"). Plaintiffs do not contend otherwise, but instead allege that they satisfied the notice-and-cure provision. Thus, the court finds that plaintiffs were required to comply with the notice-and-cure provision prior to filing their complaint.

Plaintiffs argue that they sent a draft version of the complaint to Freddie Mac on June 23, 2015, less than three weeks before filing suit. Freddie Mac contends that three weeks was not a reasonable period for it to take corrective action, and, therefore, plaintiffs did not comply with the notice-and-cure provision in the deed of trust. In its motion, however, Freddie Mac cites to several cases in which the district court found that the plaintiff provided *no notice* to the defendant prior to initiating judicial action and, thus, dismissed the action. The court is unaware of any authority to support the proposition that three weeks is not a "reasonable period" for a breaching party to at least initiate corrective action. The only authority that Freddie Mac provides is the Real Estate Settlement Procedures Act that gives lenders thirty days to take action with respect to a borrower's inquiry. 12 U.S.C. § 2605(e)(2). The court is not persuaded by this argument, as that same statute provides that the lender must send receipt of the correspondence within five days "unless the action requested is taken within such period." Id. § 2605(e)(1)(A). As such, the statute clearly contemplates a situation in which a lender may take corrective action

5

within a five-day period. Therefore, the court finds that plaintiffs have sufficiently pled compliance with the notice-and-cure provision in the deed of trust.

## II. **Failure to State Claims**

Freddie Mac next argues that, even if the court does not dismiss the complaint for failure to comply with the notice-and-cure provision in the deed of trust, the complaint fails to state any claim upon which relief may be granted.

### a. **Count I: Breach of Explicit Covenants in the Deed of Trust**

In Count I of the complaint, plaintiffs claim that Freddie Mac breached the deed of trust, which required that all actions taken towards foreclosure be in accordance with applicable law. Specifically, plaintiffs contend that GMAC Mortgage's appointment of PFC as substitute trustee was invalid, that Beswick remained the trustee under the deed of trust, and that PFC was not entitled to foreclose on the Property. Thus, plaintiffs contend that the foreclosure, Freddie Mac's subsequent unlawful detainer actions, and plaintiffs' eviction were in violation of Virginia law and the terms of the deed of trust. In moving to dismiss Count I, Freddie Mac argues that: (1) plaintiffs lack standing to challenge the appointment of PFC as substitute trustee; (2) GMAC Mortgage's appointment of PFC as substitute trustee was valid; and (3) plaintiffs' lack of notice argument is barred by the statute of limitations and not supported by the terms of the deed of trust.[1] The court will address each argument in turn.

#### i. *Standing*

As an initial matter, Freddie Mac first argues that plaintiffs do not have standing to challenge the appointment of PFC as substitute trustee. To have standing, a plaintiff must demonstrate: (1) that he or she has suffered an "injury in fact" that is concrete, particularized,

---

[1] In their opposition brief, plaintiffs assert that, under Count I, they do not claim that Freddie Mac breached the deed of trust because they did not receive actual notice of the foreclosure sale. As such, the court need not decide whether plaintiffs have stated a plausible claim for breach of the deed of trust under such theory.

6

and actual or imminent; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). To sue for a breach of a deed of trust, one must have standing to "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499, (1975). In order to have standing to sue on a contract in Virginia, "one must be a party to or beneficiary of the contract." Wolf v. Fed. Nat'l Mortg. Ass'n, 512 F. App'x 336, 342 (4th Cir. 2013).

In the instant case, the court concludes that plaintiffs do not have standing to challenge PFC's appointment as substitute trustee. Plaintiffs "do not allege that they are a party to the document appointing PFC, that they are the intended beneficiaries of the appointment, or that they had any direct involvement in the matter." Lewis v. Nationstar Mortg., LLC, No. 3:13CV00026, 2014 WL 325259, at *3 (W.D. Va. Jan. 29, 2014); see also Bennett v. Bank of Am., N.A., 3:12CV34, 2012 WL 1354546, at *7 (E.D. Va. Apr. 18, 2012) (finding that plaintiff lacked standing to challenge the validity of the substitute trustee appointment because "[p]laintiff was not a party to the document appointing PFC, and that "[the lender] appointed PFC as substitute trustee and the lender's counsel prepared the document; [the borrower] had no direct involvement"). "Without an enforceable contract right, [plaintiffs] lack standing to attack the validity of the appointment." Morrison v. Wells Fargo Bank, N.A., 30 F. Supp. 3d 449, 454 (E.D. Va. 2014). Furthermore, plaintiffs have not sufficiently established that the appointment of PFC as substitute trustee affected their rights or duties, as they "still had the obligation to make payments under the [n]ote." Id.; see also Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 735 (E.D. Mich. May 13, 2010)

7

("Although the "[b]orrower certainly has an interest in avoiding foreclosure ... the validity of the assignment does not affect whether [a] [b]orrower owes its obligations, but only to whom [a] [b]orrower is obligated."). Finally, the court believes that the substitute appointment document was clear that GMAC Mortgage wished to appoint PFC to sell plaintiffs' property at foreclosure. Plaintiffs do not allege that "the document was altered after delivery to PFC or that it misrepresented the intentions of either party." Bennett, 2012 WL 1354546, at *7. As such, the court concludes that plaintiffs do not have standing to challenge the appointment of PFC as substitute trustee.

### *ii. Validity of the Appointment of Substitute Trustee*

Even if the court could find that plaintiffs have standing to challenge PFC's appointment as substitute trustee, Freddie Mac argues that GMAC Mortgage validly appointed PFC as substitute trustee. "A trustee's power to foreclose is conferred by the deed of trust." Morrison, 30 F. Supp. 3d at 453 (citing Fairfax Cty. Redevelopment & Hous. Auth. v. Riekse, 707 S.E.2d 826, 829 (Va. 2011)). A deed of trust has two purposes, which are to "to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes." Mathews v. PHH Mortgage Corp., 724 S.E.2d 196, 200 (2012). "A substitute trustee may be appointed under a separate notarized document by removal of the original trustee named in the deed of trust." Morrison, 30 F. Supp. 3d at 454; see also Va. Code Ann. § 55-59(9) ("The party secured by the deed of trust ... shall have the right and power to appoint a substitute trustee or trustees for any reason and, regardless of whether such right and power is expressly granted in such deed of trust, by executing and acknowledging an instrument designating and appointing a substitute. "). Once appointed, the substitute trustee is empowered by Va. Code § 55-59(7) to

foreclose and sell the property...." Bolouri v. Bank of Am., No. 1:10-cv-225, 2010 WL 3385177, at *3 (E.D. Va. Aug. 24, 2010).

The court believes that plaintiffs' complaint, even liberally construed, does not contain sufficient factual allegations to undermine PFC's appointment as substitute trustee. The deed of trust, dated June 9, 2004, appointed Brandon Beswick as the original trustee. GMAC Bank then transferred the note to GMAC Mortgage, which was explicitly allowed under the terms of the note. See Bolouri, 2010 WL 3385177, at *2 (finding, under identical language found in the note here, that "[t]he explicit terms of the Note at issue here indicate that they are freely transferable"). On August 19, 2009, GMAC Mortgage appointed PFC as substitute trustee through an executed appointment of substitute trustee document that was recorded in the Clerk's Office of Louisa County. The court believes that, as the holder of the note, GMAC Mortgage was the "party secured by the deed of trust" and authorized to appoint PFC as substitute trustee for any reason pursuant to Virginia law. See id. at *3 ("[T]he Note is possessed by [the defendant], and is thus the 'party secured by the deed of trust.'"); see also Hien Pham v. Bank of N.Y., 856 F. Supp. 2d 804, 813 (E.D. Va. 2012) (finding that plaintiffs have not alleged sufficient facts to show that the appointment of a substitute trustee was fraudulent when "the record discloses no factual basis for concluding that any other entity besides [the defendant] possesses the Note"). The court further finds that the unambiguous language in the deed of trust clearly authorizes GMAC Mortgage to appoint a substitute trustee. See Compl. Ex. A ¶ 24 ("Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder," who "shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law."). Again, GMAC Bank was the original lender under the deed of trust, but then it transferred the note to GMAC Mortgage. Under Virginia law,

when a note is negotiated, the deed of trust securing that debt necessarily runs with it. See Williams v. Gifford, 124 S.E. 403, 404 (Va. 1924); see also Stimpson v. Bishop, 82 Va. 190, 1886 WL 2987, at *7 (Va. Jul. 1, 1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). In sum, the court concludes that plaintiffs have not sufficiently alleged that GMAC Mortgage did not have authority to appoint PFC as substitute trustee under Virginia law or under the terms of the deed of trust.

Nevertheless, plaintiffs argue that certain deficiencies as to the execution of the substitute trustee appointment document render such document invalid. Specifically, plaintiffs contend that the signor, Jeffrey Stephan, admitted that he signed thousands of foreclosure documents a month without reading them and without the notary public, Nikole Shelton, present in the same room. As such, plaintiffs assert that the appointment of PFC as substitute trustee was invalid, and that PFC did not have authority to foreclose on the Property. The court is constrained to disagree. Under Virginia law, mere procedural irregularities in the execution of mortgage documents will not undermine the legal validity of those documents. Va. Code Ann. § 55–106.2 ("A writing that is not properly notarized ... shall not invalidate the underlying document."); Wolf v. Fed. Nat'l Mortg. Ass'n, 830 F. Supp. 2d 153, 166 (W.D. Va. 2011), aff'd 512 F. App'x 336 (4th Cir. 2013). As was also the case in Wolf and Bennett, plaintiffs allege that Stephan signed the second page of the substitute trustee appointment document when the first page was not attached to it. However, the court in both cases found that that substitute trustee appointment was still valid because there is no requirement that documents be stapled together for proper notarization. See Bennett, 2012 WL 1354546, at *7 ("Although Wolf suggested that the 'allegation ... that the two pages of a notarized document were not executed in the same place at the same time, [may] call[ ] into question whether the document had been executed personally in front of the notary,' this is

not enough to survive a motion to dismiss." (quoting Wolf, 830 F. Supp. 2d at 165)). Most importantly, plaintiffs have not pled sufficient factual allegations to show that the substitute trustee appointment document did not accurately state the intentions of the parties. See Wolf, 803 F. Supp. 2d at 166 ("The document appointing PFC as substitute trustee, regardless of whether its pages were attached when it was executed, captured the intent of both [the lender's assignee] and PFC to be bound by it."). Therefore, the court finds that plaintiffs have failed to allege sufficient facts to show that PFC's appointment as substitute trustee was invalid.

In sum, the court finds that Count I must fail because plaintiffs do not have standing to challenge the validity of the substitute trustee appointment, and, even if they did have standing, the complaint does not contain sufficient factual allegations to undermine the appointment. Accordingly, the court will grant Freddie Mac's motion to dismiss as to Count I of the complaint.

### b. Count II: Breach of Contract

In Count II of the complaint, plaintiffs argue that Freddie Mac breached a separate contract with plaintiffs, specifically their written application for a loan modification. Freddie Mac contends that this claim fails because plaintiffs have not sufficiently alleged that there was any signed agreement between the parties that served as a loan modification.

Under Virginia law, a party claiming breach of contract must establish three elements to prevail: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) injury or damage to the plaintiff caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). In addition, all contracts related to the purchase of real estate—including a mortgage lien—must be in writing to satisfy the statute of frauds. Va. Code Ann. § 11-2(6). By the same token, any modification of a mortgage agreement is not enforceable unless it is in writing. See Lindsay v.

11

McEnearney Assocs., 531 S.E.2d 573, 575-76 (Va. 2000) ("[W]hen ... a contract is required to be in writing pursuant to [Virginia] Code § 11-2, any modification to that contract must also be in writing and signed by the party to be charged or his agent."); see also McInnis v. BAC Home Loan Servicing, LP, No. 2:11CV468, 2012 WL 383590, at *8 n. 5 ("To the extent Plaintiff is alleging a verbal contract to permanently modify her loan exists, such a contract would be barred in Virginia by the statute of frauds."). Moreover, lenders are under no obligation to provide or accept a loan modification request from a borrower. See Parris v. PNC Mortg., No. 2:14-cv-142, 2014 WL 3735531, at *6 (E.D. Va. July 7, 2014) ("There is no contractual obligation for a servicer to offer a homeowner a loan modification, however, and thus an individual cannot file suit against a lender for failure to enter into, to review, or to process a loan modification agreement — neither via breach of contract nor via breach of duty of good faith and fair dealing.").

In the instant case, plaintiffs allege that they submitted a written application for a loan modification, and that Freddie Mac approved this application and "memorialized the aforesaid approval." Compl. ¶ 51. Plaintiffs further claim that the loan modification rescinded the foreclosure and provided for restoration of plaintiffs' record ownership of their home. In support of these allegations, plaintiffs attached to the complaint a handwritten loan modification request; however, they did not include any written loan modification agreement or any written response from Freddie Mac as to the plaintiffs' loan modification request. The court believes that, in the complaint's current form, plaintiffs have failed to establish the first element of their breach of contract claim—i.e., "that a valid and enforceable contract to modify [their] loan existed, and that the parties mutually agreed the modification was effective." McInnis v. BAC Home Loan Servicing, LP, No. 2:11CV468, 2012 WL 383590, at *6 (E.D. Va. Jan. 13, 2012). "When a loan

modification is contemplated, the borrower <u>offers</u> the application to the lender, which the lender can either accept or reject after a determination of the borrower's eligibility." McInnis, 2012 WL 383590, at *7 (emphasis in original). However, at the hearing, plaintiffs asked the court for leave to amend their complaint after they have had an opportunity to engage in limited discovery in order to obtain a copy of the loan modification agreement from Freddie Mac. As explained more fully below, the court believes that plaintiffs should be allowed such opportunity. Accordingly, Freddie Mac's motion to dismiss will be denied as to Count II.

### c. Count III: Wrongful Eviction

In Count III, plaintiffs assert that Freddie Mac's improper foreclosure caused them to be wrongfully evicted from their home. Freddie Mac argues that there is no valid cause of action for wrongful eviction in Virginia and, even if such cause of action existed, it is barred by the statute of limitations.

Plaintiffs have not identified, and the court is not aware of, any authority that recognizes a cause of action for wrongful eviction outside of the landlord-tenant context. See Marabda v. Albanese & Assocs., No. 143243, 1996 WL 1065652, at *6 (Va. Cir. Ct. Dec. 6, 1996) (determining the statute of limitations for wrongful eviction "without deciding that Virginia law recognizes a tort of wrongful eviction"). Moreover, if such cause of action exists in Virginia, the court believes that the statute of limitations would be two years, as no other statute of limitations is prescribed in the Virginia Code. Id.

Here, the complaint establishes that any cause of action for wrongful eviction accrued no later than March of 2013 when Freddie Mac locked plaintiffs out of their home. Because plaintiffs filed their complaint on July 13, 2015, the court finds that this claim is time-barred. Even if the court could find that the claim was timely, the complaint is devoid of any factual

13

allegations that Freddie Mac acted wrongfully by evicting the plaintiffs. Again, the court believes that plaintiffs have not sufficiently demonstrated that the substitute trustee appointment was invalid, or that Freddie Mac lacked authority to foreclose on their home. Therefore, the court will dismiss this claim as untimely and for failure to state a claim upon which relief may be granted.[2] Accordingly, Freddie Mac's motion is granted with respect to Count III.

### d. Count IV: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count IV, plaintiffs claim that the note and deed of trust contained an implied covenant of good faith and fair dealing, and that Freddie Mac breached the implied covenant by foreclosing on their home. In response, Freddie Mac contends that it simply exercised its rights under the note and deed of trust, and that such exercise is not actionable as a breach of an implied covenant.

The Fourth Circuit has held that contracts governed by Virginia law do contain an implied covenant of good faith and fair dealing. See Wolf, 512 F. App'x at 345; Va. Vermiculite, Ltd. V. W.R. Grace & Co., 156 F.3d 535, 541-42 (4th Cir. 1988). However, "no implied duty arises with respect to activity governed by express contractual terms." Skillstorm, Inc. v. Elec. Data Sys., LLC, 666 F.Supp.2d 610, 620 (E.D.Va.2009) (citing Ward's Equip., Inc. v. New Holland N. Am., 493 S.E.2d 516, 520 (Va. 1997)). Thus, the covenant of good faith and fair dealing does not preclude a party from exercising valid contractual rights, "as long as that party does not exercise those rights in bad faith." Wolf, 512 F. App'x at 345.

In the instant case, plaintiffs' allegations in support of their claim for breach of the implied covenant of good faith and fair dealing rely solely on the allegations underlying their breach of contract claims. Because a party does not breach the implied duty of good faith and

---

[2] To the extent that plaintiffs seek compensation for their lost property as a result of the eviction, the court finds that such claim is "not relevant" as plaintiffs "sued for wrongful eviction not for either conversion or negligence." Marabda, 1996 WL 1065652, at *6 n.8.

14

fair dealing when it exercises express rights under a contract, and since the complaint includes no allegations that plausibly suggest that GMAC Mortgage's or Freddie Mac's contractual discretion "was exercised in bad faith, dishonestly, or that [they were] treated unfairly," the court must dismiss this claim. Id.; see also Morrison, 30 F. Supp. 3d at 456 ("Since the allegations underlying plaintiff's good faith and fair dealing claim pertain to defendant's exercise of its express contractual right to foreclose for nonpayment of the loan and do not allege that Defendant proceeded with its contractual right to foreclose in bad faith, plaintiff has not stated a claim for breach of the implied covenant of good faith and fair dealing."); Vazzana v. CitiMortgage, Inc., No. 7:12CV00497, 2013 WL 2423092, at *4 (W.D. Va. June 4, 2013) (dismissing breach of implied covenant claim where the plaintiff "relies on the same allegations underlying her claims for breach of contract in the previous counts to support her claim for breach of the implied covenant of good faith and fair dealing," and the complaint includes no allegations that the lender exercised its contractual discretion in bad faith). Moreover, to the extent that plaintiffs rely on Bourdelais v. JPMorgan Chase Bank, N.A. in their opposition to the motion to dismiss, the court finds that such reliance is misplaced. In that case, the borrower claimed that she was induced to default and subsequently breached her obligation under the note and deed of trust after the lender told her that she had to default in order to be eligible for a loan modification. Bourdelais v. JPMorgan Chase Bank, N.A., No. 3:10CV670, 2012 WL 5404084, at *4-5 (E.D. Va. Nov. 5, 2012). The Court found that such claim was sufficient to withstand a motion to dismiss because the plaintiff showed that the lender acted unreasonably and in bad faith. Id. at *5. In this case, plaintiffs allegedly sought a loan modification after they had defaulted on their note and after Freddie Mac had foreclosed on the property. There are no allegations that Freddie Mac induced plaintiffs to default or otherwise acted in bad faith. Finally,

"neither the note nor the deed of trust create[d] a duty on the part of [Freddie Mac] to facilitate a loan modification." Cook v. CitiFinancial, Inc., No. 3:14CV00007, 2014 WL 2040070, at *6 (W.D. Va. May 16, 2014). Therefore, the court concludes that plaintiffs have failed to plausibly establish that Freddie Mac breached the implied covenant of good faith and fair dealing. Accordingly, Freddie Mac's motion to dismiss is granted as to Count IV.

### III. Plaintiffs' Request for Leave to Amend

In their opposition brief, plaintiffs summarily request leave to amend the complaint in the event that the court grants the motion to dismiss. At the hearing on the motion to dismiss, plaintiffs' counsel also asked the court for additional time to conduct discovery as to the existence of a written loan modification document in support of Count II. Freddie Mac opposes plaintiffs' request for leave to amend, arguing that such request is futile and prejudicial.

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading "once as a matter of course" within a certain time frame and, thereafter, with the "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." Matrix Capital Mgmt. Fund. LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009).

In this case, upon review of the record, the court concludes that the request must be allowed. There is no basis for the court to believe that an amendment would be prejudicial or that there is any bad faith on the part of the plaintiffs. In addition, if plaintiffs amend their complaint to include additional allegations as to the existence of a written loan modification agreement, those amendments would likely enable their claim to withstand review under Rule 12(b)(6).

16

Therefore, the court believes that such amendments would not be futile. For these reasons, the court will grant the plaintiffs' motion for leave to amend Count II of the complaint and will allow plaintiffs to engage in limited discovery as to the existence of a loan modification agreement with Freddie Mac.

## Conclusion

For the foregoing reasons, Freddie Mac's motion to dismiss will be granted as to Counts I, III, and IV and will be denied as to Count II to allow plaintiffs an opportunity to engage in limited discovery as to the existence of a loan modification contract with Freddie Mac. Plaintiffs' request for leave to file an amended complaint will be granted.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 29th day of March, 2016.

Chief United States District Judge